# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**CHRISTIN PENNELL,**

        **Plaintiff,**                **Case No.: 8:19-cv-2433-T-36TGW**

**v.**

**GRADY JUDD, in his official**
**capacity as POLK COUNTY SHERIFF,**

        **Defendant.**

_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, CHRISTIN PENNELL, by and through her undersigned counsel and sues the Defendant, GRADY JUDD, in his official capacity as POLK COUNTY SHERIFF, and states as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1441(b).

2.     Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3.     Defendant, GRADY JUDD, was and is the duly elected Sheriff of Polk County, Florida. At all times material to this cause of action, Defendant operated the Polk County Sheriff's Office in his official capacity. The Polk County Sheriff's Office is an organization

formed pursuant to the laws of the State of Florida, is located within the confines of Polk County, Florida, operates within the State of Florida, and is a citizen of the State of Florida.

4. At all times material, Plaintiff, CHRISTIN PENNELL, was an employee of Defendant within the meaning of the Family and Medical Leave Act and Florida' Workers' Compensation statute.

## GENERAL ALLEGATIONS

5. At all times material, Plaintiff was qualified to perform her job duties within the legitimate expectations of her employer.

6. Plaintiff has retained the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

7. Plaintiff requests a jury trial for all issues so triable.

## ADMINISRATIVE PREREQUISITES

8. On June 28, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations. Plaintiff files this amended Complaint after exhausting her administrative remedies and satisfying all conditions precedent.

## FACTUAL ALLEGATIONS

9. In or around March 2011, Plaintiff began her employment with Defendant as a part-time employee until approximately May 2014 when she moved into a full-time position.

10. On or about June 18, 2015, Plaintiff requested a transfer the position of Deputy Sheriff Pilot Trainee. During her interview for the position, Chief Pilot Rob Gray acknowledged the fact that Plaintiff was getting married and further stated that it would "only

be a matter of time" before Plaintiff was pregnant. Of all applicants for the position, Plaintiff was the only person with a Class II Medical Certificate from the Federal Aviation Administration (FAA), a Private Pilot's License, over 200 flight hours, and a bachelor's degree from Embry-Riddle Aeronautical University. However, a male, Joshua Arman, was chosen for the position. The only qualification that Arman had over Plaintiff was that he was a Tactical Flight Observer (TFO) with the Polk County Sheriff. Plaintiff was later passed over a second time for the position, when the position was not posted and was given to another male, Herbert Gills, who did not have Plaintiff's qualifications, but was a TFO with the agency.

11. After being passed over twice for the Pilot Trainee position, Plaintiff put herself through TFO training on her own time, without pay, on her days off of work, and obtained her certification.

12. In or around August 2016, Plaintiff began having medical issues and was treating with physicians. As a result, Plaintiff occasionally had to call off of work.

13. In or around September 2016, Plaintiff was called into Captain (now Major) Ian Floyd's office, along with Lieutenant (now Captain) Theresa Garcia. During the conversation, Captain Floyd became irate and stated that Plaintiff needed to quit calling off of work. Plaintiff explained that she was under the treatment of her physician, who was in the process of determining whether she required surgery. Captain Floyd threw paperwork across his desk and, while screaming at Plaintiff, stated: "I don't know what your problem is." Ultimately, Plaintiff was placed on light duty, took intermittent leave under the Family and Medical Leave Act (FMLA) and, later, block FMLA leave for her surgery.

14.     In or around October 2016, Plaintiff attended an award ceremony.   When Plaintiff was receiving her Commendation, Captain Floyd leaned over to Captain Chris Colson (the Captain assigned to Plaintiff's husband, Adam Pennell, who was a Deputy Sheriff for Polk County) and stated: "She is the downfall of Adam's career."

15.     On October 29, 2016, Adam Pennell was responding to a call and discovered a female crawling across the median.   He determined that she had been involved in a single-car rollover and was injured.   While awaiting assistance from Polk County Fire Rescue, Mr. Pennell and the other female, Jessica Enchautegui-Otero, were struck by a hit-and-run driver. Sadly, Ms. Enchautegui-Otero was killed, and Mr. Pennell was severely injured.   *See* https://www.wtsp.com/article/news/local/hit-and-run-suspect-that-killed-mother-injured-deputy-now-arrested/344263775.

16.     On October 31, 2016, Melissa Calandros (Benefits Supervisor) and Heather Strafford (Benefits Coordinator) arrived at Lakeland Regional Health Center to provide Plaintiff with FMLA paperwork.   However, Calandros stated that Plaintiff did not qualify for FMLA leave because the hospital was Mr. Pennell's primary caregiver.   Instead, Plaintiff was placed on an Unpaid Leave of Absence.

17.     On December 3, 2016, Mr. Pennell was discharged from the hospital.   Upon his return home, Plaintiff had to help her husband with most of his life activities.   As a result, Mr. Pennell's doctor provided Plaintiff with a note stating that she received the proper training to care for Mr. Pennell until January 31, 2017.   Plaintiff provided the note to Defendant.

18.     On January 5, 2017, Plaintiff received a phone call from Captain Floyd, who informed Plaintiff that she needed to return to work on January 16, 2017.   Plaintiff explained

to Captain Floyd that she had a doctor's note stating that she was her husband's caretaker until January 31, 2017.  Captain Floyd told Plaintiff that Human Resources told him otherwise. Plaintiff contacted Human Resources and spoke with Calandros and Lance Fulse.  They told Plaintiff that Daniel Boreland (Workers Compensation Case Manager) told them that Mr. Pennell no longer needed a caregiver.  Plaintiff asked them if she could apply for FMLA leave and was told that she could, but that she had "already taken enough time off."  Later that day, Plaintiff received FMLA paperwork from Strafford.

19.     On January 12, 2017, Plaintiff emailed Calandros and informed her that Plaintiff took the FMLA paperwork to the physician to complete and asked why her FMLA leave was being denied to that point.  Calandros did not respond.  Since Plaintiff had not heard anything from Defendant, Plaintiff returned to work as instructed on January 16, 2017.

20.     On January 24, 2017, Plaintiff was notified by Strafford that her FMLA leave was pre-approved. On January 26, 2017, Strafford provided Plaintiff with a memorandum stating that she was approved for FMLA leave from December 12, 2016 to January 23, 2017.

21.     In or around February 2017, Rob Gray (Chief Pilot) called and told Plaintiff that she needed to turn in her flight helmet and suit.  He further stated that Plaintiff was focused on her husband's recovery and Defendant needed someone who it could depend on.  Plaintiff told Gray that she was back to work and available to return as a TFO, he told Plaintiff that he feared that she would be distracted due to Mr. Pennell's accident and did not wish to have Plaintiff as a TFO at that time.

22.     In or around June 2017, Lieutenant Garcia conducted Plaintiff's Annual Performance Review. During the review, Lt. Garcia informed Plaintiff that she would not be

receiving a pay raise because of her time off. Plaintiff explained that she had a doctor's note to care for her husband and was willing to take up the issue with Human Resources or her chain-of-command, but Lt. Garcia advised that it would not be in Plaintiff's best interest, stating: "you may win the battle, but you will not win the war."

23.    Upon Plaintiff's return to work, Plaintiff had negative 40 hours of holiday and paid time off; therefore, she was unable to take time off of work to care for her husband. On numerous occasions, Plaintiff asked Lt. Garcia if she could work part of a shift or have a shift off to assist Mr. Pennell, but each time Plaintiff's request was denied.

24.    In or around November 2017, while discussing shift bids with Sgt. Paul Leslie, they discussed the idea of moving Plaintiff to the East Division. Sgt. Leslie stated that he did not think it was in Plaintiff's best interest to go to that shift because Lt. Edward Holier does not believe that females belong in law enforcement. Sgt. Leslie followed that comment by stating that he did not "totally disagree." Sgt. Leslie previously yelled, belittled, and demeaned Plaintiff, calling Plaintiff a "fucking dumbass" more than once.

25.    In or around December 2017, Plaintiff suffered an on-the-job injury. Specifically, Plaintiff suffered burns on her face and an abraded cornea after a drug test kit exploded in her face. Plaintiff's treating physician permitted her to return to work on December 25, 2017. On the evening of December 24, 2017, Plaintiff was informed by Lt. Garcia that she needed to work on December 25, 2017 even though it was not her regularly-scheduled shift. While at work on December 25, 2017, Sgt. Mike Evans stated that he did not know why Lt. Garcia placed Plaintiff on his shift because they were almost fully staffed.

26.     In or around April 2018, after returning to work as a Deputy Sheriff, Plaintiff's husband, Adam Pennell, went to Sgt. Jennifer Harris and informed her that he was not feeling well and needed to go home for the afternoon.  Mr. Pennell told Sgt. Harris that he was experiencing severe anxiety, had scheduled an appointment with his therapist and needed some time.  The next day, Captain Theresa Garcia placed Mr. Pennell on Emergency Administrative Suspension.  Captain Garcia later commented that "people with PTSD are fucked up and do not need to have guns" when she was aware of Mr. Pennell's PTSD symptoms.

27.     On June 8, 2018, Plaintiff requested a transfer to be a Deputy Sheriff Pilot Trainee after the position was posted by Defendant.  As she did previously, Plaintiff interviewed with Chief Pilot Rob Gray (along with others).  Similar to the past, Plaintiff was the only female applicant and the only applicant with a Medical Certificate, Pilot's License, over 200 flight hours, and a bachelor's degree from Embry-Riddle Aeronautical University. Like the past, Plaintiff was passed over for a male applicant (Deputy Sheriff Reveron).  Mr. Reveron was not successful in his flight training and was later transferred back to the road. Defendant did not re-post the position.  Instead, it was given to Dustin Johnson in or around July 2018.

28.     On September 6, 2018, Plaintiff was injured in the line of duty.  Plaintiff was treated by Defendant's workers' compensation doctors and was cleared to return to work on September 14, 2018.  After being released from the emergency room, Plaintiff remained under the care of workers' compensation doctors and was later cleared to return to work on September 14, 2018.

29.     On September 17, 2018, Plaintiff and her husband learned that Mr. Pennell's workers' compensation benefits were suspended.

30.     On September 28, 2018, Plaintiff was informed by Captain Gregory Goreck that, effective October 1, 2018, she was being TDY (Temporary Duty Assignment) to Northwest District General Crimes Unit.  Captain Goreck dd not know why Plaintiff was transferred and simply stated that the transfer was "abrupt."  Similarly, Plaintiff asked Sgt. Jennifer Davis why she was TDY and Sgt. Davis did not know either.  During Plaintiff's time assigned to the General Crimes Unit, Plaintiff was expected to work a normal Detective schedule.  However, Plaintiff was also expected to work "Initiative Nights" and was the only Detective required to adjust her hours to attend the initiatives.

31.     On April 5, 2019, Plaintiff was notified by Lt. Rebecca Barnes that she was being placed under Administrative Inquiry for Job Competency.  Lt. Barnes could not reveal the name of the complainant, but advised that it was due to not following up on cases in a timely manner and for turning in a report late.  During Plaintiff's conversation, she advised Lt. Barnes that she felt that she was being targeted.  Lt. Barnes stated that she "felt bad" for having to conduct the inquiry.  Lt. Barnes further stated that she did not know why Plaintiff was TDY to General Crimes Unit, but heard that it was because Plaintiff was injured in September 2018.

32.     In May 2019, after working many overtime hours, Plaintiff notified Sgt. Davis of her overtime and asked if she could take "flex" time off on May 17, 2019 to attend a function for trauma survivors.  Plaintiff's email went unanswered; therefore, Plaintiff asked Detective James Frankowski if he could cover her on-call shift on May 17, 2019 and he agreed.

33.     On May 7, 2019, while at work Plaintiff became light-headed and dizzy.  Her heart rate was high, so she informed Sgt. Davis of her need to go to the doctor.  Sgt. Davis expressed that she did not want to send Plaintiff home.  Plaintiff explained that she has Hypertension and Sgt. Davis ultimately granted Plaintiff permission to leave.

34.     On May 9, 2019, Plaintiff treated with a cardiologist and was cleared to return to work on May 13, 2019.  The Sheriff's Office did not offer Plaintiff FMLA leave.

35.     On May 13, 2019, Detective Frankowski informed Plaintiff that Sgt. Davis instructed him not to cover Plaintiff's on-call shift on May 17, 2019.  Sgt. Davis did not provide Detective Frankowski with a reason and simply commented "she's already had a week off."

36.     On May 17, 2019, Lt. Barnes notified Plaintiff that her investigation was sustained, and that she was facing a suspension up to eighty (80) hours.  During their conversation, Lt. Barnes stated that she felt badly and that it was "ridiculous" for Plaintiff to receive such a steep suspension.

37.     On May 20, 2019, Plaintiff requested a day off (May 24, 2019) and Sgt. Davis notified her that the request was denied.  The same day, Plaintiff was informed by Captain Garcia that she was being transferred back to patrol effective May 22, 2019, and that it went "hand in hand" with her suspension.

38.     On May 21, 2019, Sgt. Davis approached Plaintiff and stated that she was "devastated" that Plaintiff was being sent back to patrol and that Plaintiff was one of her best detectives.  She further stated that the reason for Plaintiff's transfer was "petty" and did not make sense to her.  Sgt. Davis showed Plaintiff various detective statistics in Plaintiff's unit,

which indicated that Plaintiff had one of the highest clearance rates by arrest of anyone in the unit.

39.    On May 30, 2019, Plaintiff was informed that her suspension would be forty (40) hours and she would have to complete four (4) online courses.

## COUNT I
## FAMILY AND MEDICAL LEAVE ACT -- INTERFERENCE

40.    Plaintiff, CHRISTIN PENNELL, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-nine (39).

41.    Plaintiff is an individual entitled to protection under the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601, *et seq*.

42.    Plaintiff is an eligible employee within the meaning of the FMLA because Plaintiff worked for Defendant for twelve (12) months, had at least 1,250 hours of service for the Defendant during twelve (12) months immediately preceding her FMLA leave, and worked at a location where the Defendant had at least fifty (50) employees within seventy-five (75) miles.

43.    Defendant is a covered employer under the FMLA in that they had fifty (50) or more employees in twenty (20) or more work weeks in the current or preceding calendar year.

44.    Plaintiff and Plaintiff's husband suffered from serious health conditions within the meaning of the FMLA.

45.    Defendant's actions interfered with Plaintiff's lawful exercise of her FMLA rights. Specifically, Defendant denied Plaintiff her right to utilize FMLA for her own serious health condition and to care for her husband who had a serious health condition.

46.    Defendant's actions constitute violations of the FMLA.

47. As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.    Back pay and benefits;

    b.    Prejudgment interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Liquidated damages;

    e.    Attorneys' fees and costs;

    f.    Injunctive relief; and

    g.    For any other relief this Court deems just and equitable.

### COUNT II
### FAMILY AND MEDICAL LEAVE ACT -- RETALIATION

48. Plaintiff, CHRISTIN PENNELL, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-nine (39).

49. Defendant retaliated against Plaintiff in violation of the FMLA in that Plaintiff's request for FMLA leave, and the utilization of said leave was a substantial or motivating factor that prompted Defendant to take several adverse employment actions against Plaintiff, including:

    (a)    removing Plaintiff from the Tactical Flight Observer position;

    (b)    denying Plaintiff a pay raise following her Annual Performance Review;

    (c)    scheduling Plaintiff to work on her day off;

    (d)    suspending Plaintiff's husband;

    (e)    denying Plaintiff a transfer to the Deputy Sheriff Pilot Trainee position;

(f)     suspending Adam Pennell's workers' compensation benefits;

(g)     designating Plaintiff as TDY and requiring Plaintiff to perform more work than her colleagues;

(h)     placing Plaintiff under Administrative Inquiry;

(i)     denying Plaintiff a day off to attend an event for trauma survivors;

(j)     denying Plaintiff a day off on May 24, 2019;

(k)     suspending Plaintiff.

50.     Defendant's actions constitute violations of the FMLA.

51.     As a result of Defendant's actions Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.     Back pay and benefits;

b.     Prejudgment interest on back pay and benefits;

c.     Front pay and benefits;

d.     Liquidated damages;

e.     Attorneys' fees and costs;

f.     Injunctive relief; and

g.     For any other relief this Court deems just and equitable.

## COUNT III
## WORKERS' COMPENSATION RETALIATION/COERCION

52.     Plaintiff, CHRISTIN PENNELL, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-nine (39).

53.     Plaintiff was an employee within the meaning of Florida Statute § 440.02 (1993).

54.     By reason of Plaintiff's valid claim for Workers' Compensation benefits and/or Plaintiff's attempt to exercise her rights under Florida's Workers' Compensation law, Defendant retaliated against Plaintiff by:

(a)     scheduling Plaintiff to work on her day off;

(b)     suspending Plaintiff's husband;

(c)     denying Plaintiff a transfer to the Deputy Sheriff Pilot Trainee position;

(d)     suspending Adam Pennell's workers' compensation benefits;

(e)     designating Plaintiff as TDY and requiring Plaintiff to perform more work than her colleagues;

(f)     placing Plaintiff under Administrative Inquiry;

(g)     denying Plaintiff a day off to attend an event for trauma survivors;

(h)     denying Plaintiff a day off on May 24, 2019;

(i)     suspending Plaintiff.

55.     Defendant took the above unlawful actions against Plaintiff by reason of Plaintiff's valid claim for Workers' Compensation, in violation of Florida Statute § 440.205 (1993).

56.     As a direct, natural, foreseeable and proximate result of the Defendant's adverse employment actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff demands a trial by jury and judgment against Defendant, and prays for the following relief:

a.     Back pay;

b.     Future lost wages;

c.      Compensatory damages for emotional distress;

d.      Punitive damages;

e.      and such other relief to which the Plaintiff may be justly entitled.

## COUNT IV
## TITLE VII - SEX DISCRIMINATION

57.      Plaintiff, CHRISTIN PENNELL, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-nine (39).

58.      Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII")

59.      By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her sex by denying Plaintiff a promotion and suspending Plaintiff.

60.      Defendant's adverse employment decisions toward Plaintiff were motivated by sex-based considerations.

61.      Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

62.      Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

63.      As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.      Back pay and benefits;

b.      Prejudgment interest on back pay and benefits;

c.      Front pay and benefits;

    d.      Compensatory damages for emotional pain and suffering,
            inconvenience, loss of enjoyment of life and humiliation;

    e.      Punitive damages;

    f.      Attorneys' fees and costs;

    g.      Injunctive relief; and

    h.      For any other relief this Court deems just and equitable.

**COUNT V**
**FLORIDA CIVIL RIGHTS ACT - SEX DISCRIMINATION**

64.     Plaintiff, CHRISTIN PENNELL, realleges and adopts, as if fully set forth

herein, the allegations stated in Paragraphs one (1) through thirty-nine (39).

65.     Plaintiff is a member of a protected class under the Florida Civil Rights Act,

Chapter 760, *Florida Statutes* ("FCRA").

66.     By the conduct described above, Defendant engaged in unlawful employment

practices and discriminated against Plaintiff on account of her sex by denying Plaintiff a

promotion and suspending Plaintiff.

67.     Defendant's adverse employment decisions toward Plaintiff were motivated by

sex-based considerations.

68.     Defendant's unlawful and discriminatory employment practices toward

Plaintiff were intentional.

69.     Defendant's unlawful and discriminatory employment practices were done with

malice or with reckless indifference to the state-protected rights of Plaintiff.

70. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.      Back pay and benefits;

    b.      Prejudgment interest on back pay and benefits;

    c.      Front pay and benefits;

    d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.      Punitive damages;

    f.      Attorneys' fees and costs;

    g.      Injunctive relief; and

    h.      For any other relief this Court deems just and equitable.

**COUNT VI**
**AMERICANS WITH DISABILITIES ACT – DISCRIMINATION**

71. Plaintiff, CHRISTIN PENNELL, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-nine (39).

72. Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq*.

73. Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

74. Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended. Specifically, Plaintiff's health conditions substantially limited one or more major life activities and/or one or more major bodily functions.

75. Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

76. By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Americans with Disabilities Act, as amended. Specifically, Defendant suspended Plaintiff.

77. The above described acts of disability discrimination constitute a violation of the Americans with Disabilities Act, as amended, for which Defendant is liable.

78. Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

79. Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

80. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

    d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e. Punitive damages;

f.        Attorneys' fees and costs;

g.        Injunctive relief; and

h.        For any other relief this Court deems just and equitable.

## COUNT VII
## FLORIDA CIVIL RIGHTS ACT – DISABILITY/HANDICAP DISCRIMINATION

81.     Plaintiff, CHRISTIN PENNELL, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-nine (39).

82.     Plaintiff is an individual entitled to protection under the Florida Civil Rights Act, Chapter 760, *Florida Statutes*.

83.     Plaintiff is an employee within the meaning of the Florida Civil Rights Act.

84.     Plaintiff is an individual with a disability/handicap within the meaning of the Florida Civil Rights Act. Specifically, Plaintiff's health conditions substantially limited one or more major life activities and/or one or more major bodily functions.

85.     Plaintiff was a qualified individual with a disability within the meaning of the Florida Civil Rights Act, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

86.     By the conduct described above, Defendant has engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Florida Civil Rights Act. Specifically, Defendant suspended Plaintiff.

87.     The above described acts of disability discrimination constitute a violation of the Florida Civil Rights Act, for which Defendant is liable.

88.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

89.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

90.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

     a.     Back pay and benefits;

     b.     Prejudgment interest on back pay and benefits;

     c.     Front pay and benefits;

     d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

     e.     Punitive damages;

     f.     Attorneys' fees and costs;

     g.     Injunctive relief; and

     h.     For any other relief this Court deems just and equitable.

## COUNT VIII
## AMERICANS WITH DISABILITIES ACT – ASSOCIATIONAL DISCRIMINATION

91.     Plaintiff, CHRISTIN PENNELL, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-nine (39).

92.     Plaintiff is an individual entitled to protection under the Americans with Disabilities Act Amendments of 2008 ("ADAAA").

93.     Plaintiff is an employee within the meaning of the ADAAA, as amended.

94.     Pursuant to 42 U.S.C. §12112(a)-(b)(4) of the ADAAA, no covered employer shall discriminate against a qualified individual on the basis of disability, which includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." Plaintiff is an individual who is associated with an individual with a disability; specifically, Plaintiff's husband suffered from a disability. Defendant knew of Plaintiff's spouse's disability and Plaintiff's association/relationship to her spouse.

95.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff because of her association with her husband's disability. Specifically, Defendant suspended Plaintiff from her employment.

96.     Defendant believed that Plaintiff was distracted and somewhat inattentive at work because her spouse's disability required Plaintiff's attention.

97.     Stated differently, Defendant was aware that Plaintiff's spouse had a need for Plaintiff's presence at home on occasion and had an unfounded perception that Plaintiff would have to take substantial time away from work in the future to care for her spouse.

98.     The above described acts of disability discrimination constitute a violation of the ADAAA, as amended, for which Defendant is liable.

99.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

100.    As direct and proximate result of Defendant's violations of the ADAAA, Plaintiff has suffered damages and has incurred reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiff respectfully requests that judgement be entered in her favor against Defendant:

      a.        Back pay and benefits;

      b.        Front pay and benefits;

      c.        Compensatory damages for emotional pain and suffering;

      d.        Injunctive relief;

      e.        Attorney's fees and costs; and

      f.        For any other further relief the Court deems and proper.

## DEMAND FOR JURY TRIAL

101.    Plaintiff, CHRISTIN PENNELL, demands a trial by jury on all issues so triable.

      **DATED** this 29th day of April, 2020.

 

**FLORIN GRAY BOUZAS, OWENS, LLC**

/s/ *Gregory A. Owens*
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@fgbolaw.com
**MIGUEL BOUZAS, ESQUIRE**
Florida Bar No.: 48943
miguel@fgbolaw.com
16524 Pointe Village Dr.
Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)

*Trial Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 29, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Phillip J. Harris, Esquire and Megan M. McGinn, Esquire at Constangy, Brooks, Smith & Prophete, LLP, 100 North Tampa Street, Suite 3350, Tampa, Florida 33601-1840 at the following email addresses pharris@constangy.com and mmcginn@constangy.com.

**FLORIN, GRAY, BOUZAS, OWENS, LLC**

*/s/ Gregory A. Owens*
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@fgbolaw.com
gina@fgbolaw.com
**MIGUEL BOUZAS, ESQUIRE**
Florida Bar No.: 48943
miguel@fgbolaw.com
16524 Pointe Village Drive, Suite 100
Lutz, FL 33558
Telephone (727) 254-5255
Facsimile (727) 483-7942
Attorneys for Plaintiff